## NATIONAL UNION v. MARLOW.

(Circuit Court of Appeals, Eighth Circuit. May 11, 1896.)

### No. 709.

FRATERNAL-BENEFICIAL SOCIETIES—MISSOURI STATUTE.

Under the statute of Missouri (Rev. St. 1889, c. 42, art. 10) relating to the organization of "benevolent, religious, scientific, fraternal-beneficial, educational and miscellaneous associations," and providing that fraternal-beneficial societies so organized may issue beneficial certificates to provide for the relief of disabled members, or the families of deceased members, and shall not be subject to the insurance laws of the state, the fraternal-beneficial societies intended are such as are organized among the members of the same or a similar calling to promote the social, moral, and intellectual welfare of their members, and to advance their interests in other respects, and incidentally to provide for the relief of the sick and disabled, or their families; but an association organized for the sole purpose of engaging in the business of assessment insurance, though called a "fraternal-beneficial society," and having in its constitution some provisions for literary and social entertainment and for visiting the sick, is not within the purview of the statute, and is not entitled to exemption from the provisions of the insurance laws.

In Error to the Circuit Court of the United States for the Western District of Missouri.

Arcadia L. Marlow, the defendant in error, brought a suit against the National Union, the plaintiff in error, which is a corporation of the state of Ohio, to recover the amount alleged to be due to her on the following benefit certificate:

"$5,000.00.                                                                 No. 41,246.

### "National Union Benefit Certificate.

"This is to certify that Geo. W. Marlow is a beneficiary member of Economy Council, No. 215, National Union, located at St. Joseph, Missouri, according to evidence furnished by said council, and makes fifth-rate payments to the benefit fund of the order. This certificate is granted upon the express condition that all statements and representations made by said member in his application for membership in said council, and all statements made to the medical examiner by him, are true, and upon the further condition that this friend complies in the future with the laws, rules, and regulations controlling said benefit fund, or that shall hereafter be enacted by the senate to govern said council and fund. The application of the member, a copy of which is hereto attached, is hereby made a part of this certificate. If these conditions are faithfully complied with, the National Union hereby promises and agrees

to pay out of its benefit fund to Arcadia L. Marlow, 'wife,' five thousand dollars, pursuant to the provisions of the laws of the order governing said fund, upon sufficient proof of the death of the said friend, and upon the surrender of this certificate: provided, always, that the said friend shall be in good standing in this order at the time of his death. In testimony whereof the senate of the National Union has hereunto affixed its seal, and caused this certificate to be signed by the president of the senate, and attested and recorded by the secretary of the senate, this eighth day of February, A. D. 1892."

George W. Marlow, the person named in said certificate, was the plaintiff's husband. At the time of his death, as well as when said certificate was executed and delivered, he was a resident of the city of St. Joseph, Mo. The case was tried in the circuit court upon an agreed statement of facts. It was admitted in the agreed statement that the foregoing benefit certificate was duly executed and delivered to the deceased, George W. Marlow, at St. Joseph, Mo., some time during the month of February, 1892, while he was a member of Economy Council, No. 215; that he subsequently paid all dues and assessments that were exacted of him as a member; and that he complied with all the rules and regulations of the National Union that were obligatory upon him until November 16, 1893, when he committed suicide by shooting himself with a pistol. Attached to the agreed statement, and forming a part thereof, was a pamphlet containing the constitution and laws of the National Union, as well as a copy of the constitution of subordinate councils of the National Union. Such provisions found therein as are deemed most material will be referred to hereafter. The defendant company contended that the suicide of the deceased constituted a full and complete defense to the suit. On the other hand, the plaintiff below insisted that the defendant company was engaged in the business of life insurance when the benefit certificate was issued, that the suit was founded upon a contract of life insurance, and that suicide could not be pleaded as a defense to the action, by virtue of the provisions contained in section 5855, Rev. St. Mo. 1889, which reads as follows: "In all suits upon policies of insurance on life hereafter issued by any company doing business in this state, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void." The circuit court sustained the latter view, and rendered a judgment in favor of the plaintiff below. The case comes to this court on a writ of error which was sued out by the defendant company.

Chas. J. Kavanagh (Saml. P. Huston and Thos. H. Parrish with him on brief), for plaintiff in error.

M. A. Reed (W. K. James with him on brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The contract sued upon in this case is, in form and substance, a contract of life insurance, as has heretofore been held in the state of Missouri, where it was executed. State v. Merchants' Exchange Mut. Benev. Soc., 72 Mo. 146, 160. It was delivered by the defendant company, within the state of Missouri, to a resident of the state, while the company was there doing business through the agency of a local council. For these reasons the contract is governed, as to the obligations thereby incurred and imposed, by the laws of the state of Missouri; and suicide cannot be pleaded as a defense to a suit to enforce the contract, unless some provision is found in the statutes of said state which exempts it from the oper-

ation of section 5855, above quoted in the statement. Assurance Soc. v. Clements, 140 U. S. 226, 11 Sup. Ct. 822; Equitable Life Assur. Soc. v. Hiett's Adm'r, 19 U. S. App. 173, 178, 7 C. C. A. 359, 58 Fed. 541; Berry v. Indemnity Co., 46 Fed. 439. These propositions are not denied. It is claimed, however, that the defendant company is a "fraternal-beneficial society," rather than an insurance company, and that inasmuch as the laws of the state of Missouri provide for the incorporation of fraternal-beneficial societies, and permit them to issue benefit certificates insuring the lives of their members without being subject to the insurance laws of the state, the defendant company, though a foreign corporation, may likewise issue benefit certificates to its members resident within said state without accountability to local insurance laws. It is said, in substance, that the laws of Missouri permit domestic corporations to be organized precisely as the defendant is organized, and for the same purposes and objects, and that they exempt such corporations, when formed, from the operation of all laws relating to the subject of insurance. It will be seen, therefore, that the right asserted by the defendant company to insure the lives of its members within the state of Missouri, and at the same time to claim exemption from the provisions of section 5855, supra, which excludes suicide as a defense, rests wholly upon the assumption that it is a fraternal-beneficial society, within the meaning of the Missouri laws. We shall accordingly proceed to inquire whether this contention is well founded.

Chapter 42 of the Revised Statutes of Missouri of 1889 relates entirely to the organization of corporations of various kinds, and prescribes their powers and duties. Article 10 of that chapter (Rev. St. Mo. 1889, p. 719) relates to the organization of "benevolent, religious, scientific, fraternal-beneficial, educational and miscellaneous associations." In this article are found the following provisions, to wit:

"Sec. 2821. Any number of persons, not less than three, who shall have associated themselves by articles of agreement in writing, as a society, company, association or organization formed for benevolent, religious, scientific, fraternal-beneficial or educational purposes, may be consolidated and united into a corporation. Such articles of agreement may be organic regulations, or a constitution, or other form of association, and any corporate name, not already assumed by another corporation, may be chosen as the title of the corporation: provided, always, that the purpose and scope of the association shall be clearly and fully set forth.

"Sec. 2822. The persons holding the offices respectively of president, secretary and treasurer of the association, or other chief officers, by whatever name they may be known, shall submit to the circuit court having jurisdiction in the city or county where such association is located, the articles of agreement, with a petition praying for a pro forma decree thereon. If the court shall be of the opinion that such articles of agreement and purposes of association come properly within the purview of this article, and are not inconsistent with the constitution or laws of the United States or of this state, the court shall enter of record an order to that effect, a certified copy of which order shall, by the clerk, be indorsed upon or attached to said articles. * * * And whenever the judge to whom such petition shall have been presented shall entertain any doubt as to the lawfulness or public usefulness of the proposed corporation, it shall be his duty to appoint some competent attorney as a friend of the court, whose duty it shall be to examine said petition and

show cause, if any there be, on some day to be fixed by the court, why the prayer of said petition should not be granted, and said attorney shall not be confined in his examination to said petition and articles of association, but may introduce such testimony as may be available and proper in order to fully disclose the true purposes of the association; and upon the hearing thereof the court shall make such further order granting or dismissing said petition as to it may seem best, and upon the granting of such petition, the petitioners shall cause the articles of agreement, with the certificate aforesaid, to be recorded in the office of the recorder of deeds of the county in which the association is located, and then filed in the office of the secretary of state. * * *

- "Sec. 2823. Fraternal-beneficial societies may provide for the relief and aid of their members and families, widows, orphans or other kindred dependents of deceased members, or for assisting such as may be sick or disabled, from the proceeds of assessments upon the members of such society or association; and to that end may issue to its members beneficial certificates, payable at such time and in such manner as shall be therein provided, and do such other things as shall be provided by the laws of the state; and such fraternal-beneficial societies shall not in any way be subject to the insurance laws of the state, nor under the control or supervision of the insurance department of the state, nor pay any corporation or other tax. * * *"

"Sec. 2825. Any association formed for benevolent purposes, including any purely charitable society, hospital, asylum, house of refuge, reformatory, and eleemosynary institution, fraternal-beneficial associations, or any association whose object is to promote temperance or other virtue conducive to the well-being of the community, and, generally, any association formed to provide for some good in the order of benevolence, that is useful to the public, may become a body corporate and politic under this article. * * *"

Provisions similar to those above quoted, relative to the organization of benevolent and religious associations, have been in force in the state of Missouri for more than 30 years last past. Gen. St. Mo. 1865, c. 70, p. 371; 1 Wag. St. Mo. 1872, art. 8, p. 339; Rev. St. Mo. 1879, art. 10, p. 178. But the phrase "fraternal-beneficial societies" is first found in the Revised Statutes of Missouri for the year 1889, in the connection above shown; that is to say, in sections 2821, 2823, 2825, supra. The interpolation of these words into article 10, c. 42, in the revision of 1889, appears to have been the work of the revising committee, as we do not find any special enactment providing for the incorporation of "fraternal-beneficial societies." It is noteworthy that while the phrase "fraternal-beneficial" is used in the connection above shown to designate a particular kind of societies or associations that may be incorporated, yet it was not thought necessary to otherwise define the descriptive phrase thus employed. We must accordingly assume that the words "fraternal-beneficial" were used in their ordinary sense,—to designate an association or society that is engaged in some work that is of a fraternal and beneficial character. According to this view, a fraternal-beneficial society, within the purview of the Missouri statute, would be one whose members have adopted the same, or a very similar, calling, avocation, or profession, or who are working in unison to accomplish some worthy object, and who for that reason have banded themselves together as an association or society to aid and assist one another, and to promote the common cause. The term "fraternal" can properly be applied to such an association, for the reason that the pursuit of a common object, calling, or profession usually has a tendency to create a brotherly feeling among those who are thus

engaged. It is a well-known fact that there are at the present time many voluntary or incorporated societies which are made up exclusively of persons who are engaged in the same avocation. As a general rule such associations have been formed for the purpose of promoting the social, moral, and intellectual welfare of the members of such associations, and their families, as well as for advancing their interests in other ways and in other respects. The Brotherhood of Locomotive Engineers may be instanced as one of the class of societies or associations to which we have referred, and many others of a like character might be mentioned. Many of these associations make a practice of assisting their sick and disabled members, and of extending substantial aid to the families of deceased members. Their work is at the same time of a beneficial and fraternal character, because they aim to improve the condition of a class of persons who are engaged in a common pursuit, and to unite them by a stronger bond of sympathy and interest. Such associations may well be described, in the language of the statute, as "organizations formed for * * * fraternal-beneficial * * * purposes." We think, therefore, that the legislature had this class of organizations in mind when it provided for the incorporation of fraternal-beneficial associations, and gave them the power to issue benefit certificates without being subject to the insurance laws of the state. It declared, in effect, or intended to so declare, that when a certain number of persons, among whom some natural bond of sympathy or interest existed, should form an association for self-improvement, or for the purpose of aiding one another and strengthening the bond of union, such association might be consolidated into a corporation, and incidentally, to further the ends of its creation, might provide for the relief of members and their families, in case of sickness or death, by levying assessments and issuing benefit certificates. We find nothing in the various sections of the Missouri statute above quoted which justifies the conclusion that the lawmaker intended to create a class of corporations, termed "fraternal-beneficial societies," for the sole and only purpose of doing an insurance business, provided that such corporations transacted the business in a certain way; that is, through the agency of local councils or lodges. The statute (section 2821, supra) shows, as we think, very plainly, that a fraternal-beneficial society can only become a body politic and corporate by satisfying the court to whom its petition for incorporation is addressed that it is engaged in some work, or proposes to become so engaged, which is distinctively of a fraternal and beneficial nature. When this point is established to the satisfaction of the court by an inspection of its articles of association, and the society becomes duly incorporated, the statute (section 2823, supra) then confers upon the society the right to make provision for the relief of its sick and disabled members and their families. This right, however, is merely incidental to the main purpose of its creation. The statute now in question does not grant corporate life for the sole and only purpose of enabling the association, when formed, to engage in the business of insurance on the assessment plan, nor for the sole and only purpose of aiding its members when

in sickness and distress. These are merely incidental functions which the corporation may exercise when it has become duly incorporated for some fraternal and beneficial purpose. For more than 25 years last past the state of Missouri has exercised a rigid supervision over the business of life and fire insurance, when transacted in the usual way by foreign and domestic companies duly organized for that purpose. Laws Mo. 1869, pp. 23, 26, 45. Within the last 10 years it has also found it necessary to exercise supervision and control over the affairs of companies or associations doing an insurance business on the assessment plan. Laws Mo. 1887, p. 199. It is by no means probable, therefore, that the stray provisions found in sections 2821, 2823, and 2825, above quoted, appearing as they do in the chapter relative to the incorporation of benevolent, religious, and scientific societies, were intended to open wide the door for the transaction of an insurance business, on a large scale, in all parts of the state, without supervision of any sort, provided it was done by associations composed of local councils or lodges. It is far more reasonable to suppose that the provisions in question were inserted in the statute for the benefit of certain societies or associations, such as we have heretofore mentioned, which were engaged in some kind of fraternal and beneficial work, other than the business of collecting assessments, and distributing them to sick and needy members, and to the widows and orphans of deceased members. From any point of view, we think that an association or society which is exclusively engaged in doing the kind of work last mentioned (that is, of collecting and distributing assessments) is not a fraternal-beneficial society, within the fair intent and meaning of the Missouri statute. A company having no other purpose than that in view, in our opinion, cannot lawfully become incorporated under the statute above quoted; and it goes without saying that a foreign corporation which is engaged exclusively in such work cannot transact business in the state of Missouri, and at the same time claim exemption from its insurance laws.

Such being the construction of the Missouri statute which we feel constrained to adopt, it becomes necessary to inquire whether the defendant company is in fact a fraternal-beneficial society, within the meaning of the statute, and whether it is entitled, on the ground of comity, to do the business in which it appears to be engaged, within the state of Missouri, without being subject to local insurance laws. This question must be considered in the light of the constitution and laws of the order, which form a part of the agreed case. Articles 1 and 2 of the constitution provide that the corporate body shall be known as "The Senate of the National Union," and that the object of the order shall be:

"(1) To associate white male persons, of good moral character, who are socially acceptable, but, if for beneficial membership, of sound bodily health, and between twenty and fifty-four years of age; (2) to give material aid to its members and their dependents; (3) to advance its members morally, socially, and intellectually; (4) to establish a fund for the relief of sick and distressed beneficial members; (5) to establish a benefit fund, from which, upon sufficient proof of the death of a beneficiary member of the order who has complied with all its lawful requirements, a sum not exceeding

five thousand dollars shall be paid to such member or members of the family of the deceased, who are related to him by consanguinity or affinity, as may have been designated by the member in accordance with the laws of the order."

The remaining 13 articles of the constitution, consisting of 24 pages of closely-printed matter, prescribe with great detail the manner in which the corporation shall be governed and its business be transacted; but we fail to find a single provision which discloses the means by which the moral, social, or intellectual condition of the members of the order was to be improved, or that provision is anywhere made for the doing of any work of a fraternal or benevolent character. The first section found in what are termed the "Laws of the Order" provides for the creation of a benefit fund, which is to be made up of assessments levied upon members of the order. Appended thereto is a table of rates, similar to those ordinarily published by insurance companies, which shows the amount to be paid by persons between the ages of 20 and 54 (who are the only persons eligible to beneficial membership) for benefits to be paid on the death of a member, in amounts ranging from $1,000 to $5,000. Law 5 of the order provides, in substance, that no council of the order shall be instituted for less than $100, which sum is to be paid to the senate; that all members of the order, to be entitled to benefits, must undergo a medical examination to be approved by the medical director of the order; that no council shall be instituted in the states of Louisiana, Mississippi, and Florida, nor in that part of Tennessee and Kentucky lying west of the Tennessee river, nor in that part of Arkansas south of the thirty-fourth degree of north latitude, nor in the southeastern part of Georgia bordering on the Atlantic, nor in that portion of Texas lying south of the thirtieth degree of north latitude, nor in that portion of Alabama lying south of the thirty-second degree of north latitude, nor in the lowlands of South Carolina bordering on the Atlantic; that, whenever any pestilence or epidemic shall prevail or be threatened in any district where a council of the order is established, the president of the order shall immediately, upon learning of the fact, suspend the initiation of new members during the continuance of such pestilence or epidemic; that no person shall be admitted as a beneficial member of the order who engages in blasting, mining, submarine occupations, manufacturing inflammable or explosive materials, or in navigation, or who acts as a conductor of railroad trains, or as a mail or express messenger on trains, or as a baggage master, yard master, switchman, brakeman, locomotive or steamboat engineer, fireman, saloon keeper, bar tender, policeman, or as a sawyer or an assistant sawyer in a circular or band sawmill, or as a laborer about an electric light plant, whose employment may be dangerous, and that no benefit shall be payable on account of the death of any member while engaged in a mob, riot, or insurrection, or while violating the laws of the land, or who dies by the hand of justice; and that no benefits shall be paid upon the death of a member who commits suicide within two years after becoming such, whether suicide be committed while the member was either

sane or insane.    Laws 10 and 11 provide, in substance, as follows:
That the president of the order shall from time to time commission
suitable persons to be medical examiners for councils, who shall
be members of the order, graduates of reputable medical colleges,
and practicing physicians in good standing; that the medical exam-
iners so appointed shall carefully examine all applicants for bene-
ficial membership, in accordance with the form prescribed by the
senate; that the fee for medical examinations shall not be less
than $2, and that the medical director's fee for supervision shall
be 50 cents; that no person shall become a beneficiary member un-
til his examination shall have been approved by the medical di-
rector, and that if any member shall obtain admission into the or-
der by false statements, concealments, or evasion of facts regarding
the personal or family history of the applicant, or his present con-
dition of health, he shall be liable to expulsion therefor.    The
laws of the order cover some 25 pages of printed matter, but they
are also destitute of any provisions which show that the order is a
fraternal, or even a charitable, organization, or that it is engaged
in any kind of work that is calculated or intended to improve ei-
ther the moral, mental, or social condition of its members.    In the
constitution which the incorporated society has prescribed for the
government of local councils of the order, we find the following pro-
visions, in substance:    That the speaker shall provide and direct
the literary, moral, and social entertainments of the council; that
the president, vice president, and ex-president shall constitute the
relief committee, of which the president shall be chairman; that
their duty shall be to visit the sick and distressed members, and
report at each stated meeting all applications for relief, with rec-
ommendations concerning the same; and that any member in good
standing, and not in arrears for dues or fines, having six months
previously become a beneficiary member, who may become dis-
abled, by sickness or other disability, from following his usual busi-
ness, or some other occupation, shall, if such sickness or disability
continues for more than one week, receive from the funds of the
council a sum sufficient to pay his dues and assessments thereafter
maturing while said sickness or disability continues, and such
additional benefits as the council may appropriate from time to
time by a two-thirds vote of the members present.    With refer-
ence to these latter provisions, it may be remarked that the agreed
case fails to show that the speakers of any local councils do in fact
make a practice of providing literary and moral entertainments
for the members of the several councils over which they preside,
or that the respective councils make a practice of appropriating the
funds of the council for the relief of sick and needy members.    In
the absence of such testimony, and in view of the elaborate and
carefully worded provisions found in the constitution and the laws
of the order with respect to the other work in which it is engaged,
we may well infer that no considerable amount of time or money is
spent by the order in providing literary, moral, or social enter-
tainments, or in caring for its sick and disabled members.    The
provisions on this subject are probably a dead letter, which are

more notable for the breach thereof than for the observance. The main efforts of the order are doubtless directed to securing new members, for the purpose of increasing its income and enlarging its benefit fund; and that it has been reasonably successful in this line of effort is demonstrated by the fact that the evidence shows that the income of the order for a period of five months, during the year 1892, amounted to over $450,000. In view of the purposes of the order, as disclosed by its constitution and laws, it is obvious, we think, that it is not a fraternal-beneficial society, in the sense heretofore defined. Its members are not restricted to any particular class, calling, or profession. Neither is it essential to membership that they shall have become interested or united in some good work or in some reform which they believe to be conducive to their own welfare, or to the welfare of mankind in general. The founders of the order saw fit to prescribe only the following tests of membership: That one seeking admission to the order should be a "white male person, of good moral character"; that he should be physically sound, and able to pass a strict medical examination; and, furthermore, that he should not reside in an unhealthy locality, nor be engaged in a dangerous occupation. These are the tests of membership that are usually prescribed by every well-regulated insurance company. In its practical operations, therefore, the defendant company cultivates fraternity and confers benefits in the same manner that every insurance company doing business on the mutual plan cultivates feelings of fraternity, and confers benefits upon its members. Or, in other words, when the defendant is stripped of all disguises, and judged by the standard of what it is engaged in doing, and what it was most likely organized to do, it is simply an insurance company which carries on an extensive business on the assessment plan. Berry v. Indemnity Co., 46 Fed. 439; Indemnity Co. v. Berry, 4 U. S. App. 353, 1 C. C. A. 561, 50 Fed. 511; State v. Miller, 66 Iowa, 26, 23 N. W. 241; State v. Merchants' Exchange Mut. Benev. Soc., 72 Mo. 146; State v. Citizens' Ben. Ass'n, 6 Mo. App. 163, 172; State v. Farmers' Benev. Ass'n, 18 Neb. 276, 25 N. W. 81. But, while it is thus carrying on the business of insurance on the assessment plan, it appears that it has not qualified itself, under the laws of Missouri, to do a business of that kind; and for that reason it cannot claim exemption from the provisions of section 5855, supra, which is accorded by section 5869 of the Revised Statutes of Missouri to those assessment insurance companies that have duly qualified to transact an insurance business within the state. Indemnity Co. v. Berry, supra. It results from these views that the judgment of the circuit court was right, and it is therefore affirmed.