998 So.2d 56 (2008)
The SHERWOOD FOREST COUNTRY CLUB
v.
Elmer B. LITCHFIELD, as Sheriff and Ex Officio Tax Collector for the Parish of East Baton Rouge and Brian Wilson, as assessor of East Baton Rouge Parish.
No. 2008-C-0194.
Supreme Court of Louisiana.
December 19, 2008.
*58 Brian Andrew Eddington, Baton Rouge, for applicant.
McCranie, Sistrunk, Anzelmo, Hardy, Maxwell & McDaniel, Mark Emerson Hanna, Burgess E. McCranie, Jr., Eugene Taehyun Rhee, Metairie, for respondent.
WEIMER, J.[1]
The sole issue before this court is whether a nonprofit corporation that was organized "[t]o acquire, own, maintain and conduct a country club, house and grounds,. . . a golf course, tennis courts, swimming pool, . . . and to provide such other forms of recreation and amusement and entertainment as appertain to the usual conduct of a country club" has shown entitlement to an exemption from the payment of ad valorem property taxes as an "association organized and operated exclusively for . . . fraternal . . . purposes" pursuant to La. Const. art. VII, § 21(B)(1)(a)(i).
Our resolution of the question is based on an examination of the nature of fraternal organizations as they developed in the United States historically and legally, including the designation of various fraternal organizations in federal tax law and Louisiana statutory provisions. Cognizant of the canons of strict construction applicable to a litigant's claim to a tax exemption, we find plaintiff's evidence of record merely shows that it is a club organized for pleasure, recreation and other nonprofitable purposes. Plaintiff has failed to show that it is a fraternal organization entitled to the exemption from ad valorem taxation provided to the types of organizations enumerated in the Louisiana Constitution of 1974. Thus, finding the lower courts erred in holding plaintiff was entitled to the exemption from property taxes, we reverse and dismiss plaintiff's petition with prejudice.

FACTS AND PROCEDURAL BACKGROUND
Sherwood Forest Country Club ("Sherwood Forest") was incorporated as a nonprofit Louisiana corporation in 1955. According to its original Articles of Incorporation, Sherwood Forest was organized and operates to maintain a club house and grounds, a golf course, tennis courts, and swimming pool and to provide other forms of recreation, amusement and entertainment "as appertain to the usual conduct of a country club." According to its Restated Articles of Incorporation dated November 21, 2000, Sherwood Forest is "organized exclusively for the purposes set forth in section 501(c)(7) of the Internal Revenue Code," which provides an exemption from federal *59 income tax for "[c]lubs organized for pleasure, recreation, and other nonprofitable purposes." Sherwood Forest is exempt from federal income tax pursuant to 26 U.S.C. § 501(c)(7);[2] its federal income tax return reflects that membership dues and assessments provide access by members only to facilities for social and recreational use. The president of Sherwood Forest, B. William Abraham, attested that the property owned by the country club is not used for any commercial purposes unrelated to what he referred to as its "fraternal" purposes.
In 2005, Sherwood Forest was assessed with ad valorem property taxes in the amount of $21,100.38. Sherwood Forest paid this amount under protest and then filed the instant suit to recover the taxes. Apparently, prior to 2005 Sherwood Forest had paid the taxes without protest.
On September 15, 2006, Sherwood Forest filed a motion for summary judgment. After a hearing, the trial court rendered judgment in its favor. The court ordered that the tax assessed by defendant Brian Wilson, Assessor of East Baton Rouge Parish, and collected by defendant, Elmer B. Litchfield, Sheriff of East Baton Rouge Parish, be refunded with interest pursuant to LSA-R.S. 47:2110, which provides, in pertinent part, that a taxpayer that prevails in a suit for refund is entitled to interest.
Assessor Wilson perfected a suspensive appeal; the Court of Appeal, First Circuit affirmed. Sherwood Forest Country Club v. Litchfield, 07-0989 (La.App. 1 Cir. 12/21/07), 978 So.2d 443. The appellate court noted that in support of its motion, Sherwood Forest submitted various affidavits and other documentary evidence; the Assessor did not submit any evidence to refute the plaintiff's submissions. The Assessor did not contest Sherwood Forest's status as a nonprofit corporation that had been declared exempt from income tax or its claim that no portion of its net earnings inured to the benefit of any private shareholder. Thus, the sole issue before the lower courts was the Assessor's contention that Sherwood Forest was not organized and operated exclusively for fraternal purposes.
Noting that the constitutional article does not define the word "fraternal," the court of appeal resorted to dictionaries for the generally prevailing meaning:
The term "fraternal" is defined in Black's Law Dictionary, 594 (5th ed.1979), as "[b]rotherly; relating or belonging to a fraternity or an association of persons formed for mutual aid and benefit, but not for profit."[[3]] The term "fraternity" is further defined in Webster's II New College Dictionary, 485 (1995) as "[a] body of people associated for a common interest or purpose" and "[a] group of people united by similar backgrounds, interests, or occupations."
*60 Sherwood Forest, 07-0989 at 5, 978 So.2d at 446.
The court of appeal concluded that Sherwood Forest is a "body of people associated for mutual benefit or for a common interest or purpose, but not for profit." Although some of the activities that take place at the country club, such as golf or tennis, are recreational in nature, the court found characterization of these activities as "fraternal" is not precluded. Also, other activities, such as dining with friends at the club's restaurant or sitting by the swimming pool are, according to the court, clearly fraternal.
We granted a writ to determine whether the lower courts reached the correct conclusions. Sherwood Forest Country Club v. Litchfield, 08-0194 (La.4/25/08), 978 So.2d 373.

DISCUSSION
We begin as we must with the words of the constitutional provision to be interpreted in order to resolve the issue in this matter,[4] La. Const. art. VII, § 21, which states in pertinent part:
In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be exempt from ad valorem taxation:
. . . .
(B)(1)(a)(i) Property owned by a nonprofit corporation or association organized and operated exclusively for religious, dedicated places of burial, charitable, health, welfare, fraternal, or educational purposes, no part of the net earnings of which inure[s] to the benefit of any private shareholder or member thereof and which is declared to be exempt from federal or state income tax[.][[5]]
. . . .
None of the property listed in Paragraph (B) shall be exempt if owned, operated, leased, or used for commercial purposes unrelated to the exempt purposes of the corporation or association.[[6]]
*61 Thus, to qualify as an organization eligible for a property tax exemption pursuant to La. Const. art. VII, § 21(B)(1)(a)(i) an organization must be: (1) a nonprofit corporation or association; (2) organized and operated exclusively for religious, burial, charitable, health, welfare, fraternal, or educational purposes; (3) with no net earnings inuring to the benefit of any private shareholder or member; and (4) exempt from federal or state income tax.
As a general rule, articles of the constitution are to be construed and interpreted using the same canons of interpretation applicable to statutes and written instruments. State v. Expunged Record (No.) 249,044, 03-1940, p. 4 (La.7/2/04), 881 So.2d 104, 107. Thus, among the basic and well-settled principles of statutory construction that guide us in resolving the issue of law presented here is that "words of a law must be given their generally prevailing meaning." LSA-C.C. art. 11, which reproduces the substance of Articles 14 and 15 of the Louisiana Civil Code of 1870.
Nevertheless, the first and foremost principle in a tax exemption case is that an exemption, being an exceptional privilege, must be expressly and clearly conferred in plain terms. Showboat Star Partnership v. Slaughter, 00-1227, p. 10 (La.4/3/01), 789 So.2d 554, 560; McNamara v. Central Marine Service, Inc., 507 So.2d 207, 208 (La.1987). Exemption provisions are strictly construed against the taxpayer claiming the benefit of an exemption and must be unequivocally and affirmatively established by the taxpayer. Archer Daniels Midland Company v. Parish School Board of the Parish of St. Charles, 01-0511, p. 11 (La.11/28/01), 802 So.2d 1270, 1278; Showboat, 00-1227 at 10, 789 So.2d at 560. The taxpayer's stringent burden is to overcome the judicial maxim that "to doubt is to deny the exemption." Citifinancial Retail Services Division of Citicorp Trust Bank, FSB v. Weiss, 372 Ark. 128, 271 S.W.3d 494 (2008).
The people of our state are called upon to sustain the burdens of taxation as a requisite of civil government. Historically, exemptions were allowed based upon the theory that the concessions are due as quid pro quo for the performance of services essentially public. Beta Xi Chapter of Beta Theta Pi v. City of New Orleans, et al., 18 La.App. 130, 134, 137 So. 204, 207 (La.App.Orleans 1931), writ denied, (La. 1932), citing Carteret Academy v. State Board of Taxes and Assessment, 102 N.J. Law, 525, 133 A. 886, 887, (1926), aff'd, 104 N.J. Law, 165, 138 A. 919 (1927).
The rules of strict construction are particularly applicable to our interpretation of La. Const. art. VII, § 21 because the first paragraph is actually a prohibition: "In addition to the homestead exemption . . ., the following property and no other shall be exempt from ad valorem taxation." (Emphasis supplied.) Likewise, the legislature has specified that "[a]ll property situated within the state, except such as is expressly exempted from taxation by law, shall be subject to taxation on the basis of the assessed valuation thereof." (Emphasis supplied.) LSA-R.S. 47:1951. An unwarranted extension of the constitutional exemption would do violence to these prohibitions. Absent a clear, unequivocal, and affirmative expression that the exemption from property taxes applies to an organization such as Sherwood Forest, the exemption of La. Const. art. VII, *62 § 21(B)(1)(a)(i) cannot be interpreted to extend to Sherwood Forest. See Showboat Star Partnership, 00-1227 at 10, 789 So.2d at 560-561.
Specifically concerning exemptions from property taxes, the theory of the law is that all property shall pay its just portion of public burdens. Historically, when property is put to some use calculated to minimize the expenses of government are exemptions justified. Beta Xi Chapter of Beta Theta Pi, 18 La.App. at 132, 137 So. at 205, citing People ex rel. Medical Society of Kings County v. Neff, 34 App. Div. 83, 53 N.Y.S. 1077, 1079. Although the word "fraternal" can be defined broadly,and in one sense neighbors who get together for back-yard barbeques are gathering for fraternal purposesit is only on the theory that fraternal acts alleviate the burdens of government that tax exemptions of property devoted to fraternal purposes can be justified. See Beta Xi Chapter of Beta Theta Pi, 18 La.App. at 133, 137 So. at 206. The predominate rule is to deny a property tax exemption for property used primarily for social or recreational purposes, even if that property is owned by a fraternal organization.[7]
It is true that where statutes are clear and unambiguous no interpretation thereof may be attempted by the courts. The letter may not be abandoned in an effort to pursue the spirit. But if, as a consequence of following the letter of the law, an absurd result is reached, then it is the duty of courts to seek out the motive which prompted the enactment. General terms should be limited in their application to avoid injustice, oppression, or an absurd consequence; the reason of the law in such cases should prevail over its letter. State ex rel. Cassidy v. Baker, 135 La. 92, 98-99, 64 So. 993, 995 (1914), citing Rector, etc. of Holy Trinity Church v. U.S., 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892). Further, the Louisiana legislature has recognized that "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." LSA-C.C. art. 9. However, "[w]hen the language of the law is susceptible of different meanings, *63 it must be interpreted as having the meaning that best conforms to the purpose of the law." LSA-C.C. art. 10.
The parties in the instant case do not dispute the fact that Sherwood Forest has been granted an exemption from federal income taxes. Indeed, Sherwood Forest urges that its exemption from federal income tax distinguishes it from numerous other country clubs in the state, although there is no evidence in the record to support this argument.
Nevertheless, because Louisiana has designated an exemption from either federal or state income taxes as a requisite for entitlement to a property tax exemption pursuant to La. Const. art. VII, § 21(B)(1)(a)(i), it is appropriate to consider the nature of the federal exemption granted to Sherwood Forest. Accord, W. Horace Williams Co. v. Cocreham, 214 La. 520, 528, 38 So.2d 157, 159 (1948) (Decisions interpreting provisions of the federal income tax law are pertinent to a consideration of Louisiana income tax law which was patterned on the federal law.) To benefit from the exception, Sherwood Forest claims it has been "organized and operated exclusively for . . . fraternal . . . purposes" as the constitution provides. (Emphasis supplied.) Thus, the provisions of the Internal Revenue Act granting income tax exemptions to fraternal organizations become pertinent; these exemptions appear in 26 U.S.C. § 501(c)(8) and (10). Yet, Sherwood Forest's own evidence shows in its Restated Articles of Incorporation that it was "organized exclusively" for the purposes set forth in Section 501(c)(7), which are "pleasure, recreation, and other nonprofitable purposes." (Emphasis supplied.) Obviously, unless "fraternal purposes" is synonymous with "pleasure, recreation, and other nonprofitable purposes" the exemption must be denied.
Three paragraphs of the IRC, 26 U.S.C. 501(c)(7), (8), and (10), are pertinent in the instant case, because these paragraphs describe exempt organizations. These paragraphs provide, as follows:
(7) Clubs organized for pleasure, recreation, and other nonprofitable purposes, substantially all of the activities of which are for such purposes and no part of the net earnings of which inures to the benefit of any private shareholder.
(8) Fraternal beneficiary societies, orders, or associations[[8]]
(A) operating under the lodge system or for the exclusive benefit of the members of a fraternity itself operating under the lodge system, and
(B) providing for the payment of life, sick, accident, or other benefits to the members of such society, order, or association or their dependents.
. . . .
(10) Domestic fraternal societies, orders, or associations, operating under the lodge system
(A) the net earnings of which are devoted exclusively to religious, charitable, scientific, literary, educational, and fraternal purposes,[[9]] and

*64 (B) which do not provide for the payment of life, sick, accident, or other benefits.
The Internal Revenue Service (IRS) has contrasted the basic requirements for organizations seeking exemptions under the above quoted provisions. SEAN M. BARNETT & WARD L. THOMAS, IRS Exempt Organizations Continuing Professional Education Technical Instruction Program FY 2004: IRC 501(c)(8) Fraternal Beneficiary Societies and IRC 501(c)(10) Domestic Fraternal Societies, http://www.irs.gov/ pub/irs-tege/eotopicf04.pdf (hereinafter "BARNETT & THOMAS"). Because both Paragraph 8 and Paragraph 10 use the adjective "fraternal" in the name of the organizations identified for exemptions, both paragraphs require a fraternal purpose. The IRS has noted that the terms "fraternal" and "operating under the lodge system"[10] mean the same under 26 U.S.C. § 501(c)(8) and (10). The major difference between the two paragraphs is that a Paragraph 8 organization must provide for the payment of life, sick, accident or other benefits,[11] whereas a Paragraph 10 organization must not provide such benefits. BARNETT & THOMAS at 14. Further, to be described in paragraph 10, an organization must not only have a fraternal purpose, but it must be a domestic (i.e., organized in the United States) organization with net earnings devoted exclusively to religious, charitable, scientific, literary, educational, and fraternal purposes.[12]Id. at 13.
*65 To fit within 26 U.S.C. § 501(c)(7), the section referenced in the Restated Articles of Incorporation of Sherwood Forest, an organization must meet the following requirements: 1) a club organized for pleasure, recreation, and other nonprofitable purposes; 2) substantially all activities must be for such purposes; 3) no part of net earnings may inure to the benefit of any private shareholder; and 4) the club need not, and generally will not, operate under the lodge system or have a fraternal purpose. See BARNETT & THOMAS at 15. Social clubs that are exempt from income tax pursuant to 26 U.S.C. § 501(c)(7) are excluded from procuring an exemption under 26 U.S.C. § 501(c)(10). Treas. Reg. § 1.501(c)(10)-1.
The rationale for the Section 501(c)(7) "club" exemption differs significantly from the rationale for the other types of organizations listed in Section 501(c), such as the Section 501(c)(3) exemption. See footnote 12, supra. In regard to the exemption of Section 501(c)(7), Congress intended that individuals be permitted to join together in various organizations "to provide recreational or social facilities or other benefits on a mutual basis, without tax consequences." Pittsburgh Press Club v. United States, 579 F.2d 751, 761 (3 Cir. 1978), citing S.Rep. No. 91-522, 91st Cong., 1st Sess. 71, 1969-3 C.B. 469-70, U.S.Code Cong. & Admin. News 1969, pp. 1645, 2100. The mutuality of such a club requires that members share both the benefits and the burdens of the club. The individual members have already paid income taxes on the funds that they contribute to the organization. Thus, resources are merely shifted between members of such a group, and no tax consequences attach to that shifting. The "exemption" for Section 501(c)(7) clubs is more in the nature of a classification of the club's income as nontaxable rather than the granting of the privilege of being relieved of a tax liability. It was explained in McGlotten v. Connally, 338 F.Supp. 448, 458 (D.D.C.1972) that:
Congress has determined that in a situation where individuals have banded together to provide recreational facilities on a mutual basis, it would be conceptually erroneous to impose a tax on the organization as a separate entity. The funds exempted are received only from the members and any "profit" which results from overcharging for the use of the facilities still belongs to the same members. No income of the sort usually taxed has been generated; the money has simply been shifted from one pocket to another, both within the same pair of pants.
The rationale for granting an income tax exemption to a club such as Sherwood Forest because the club's revenues from its members have already been taxed does not support the granting of a property tax exemption. The country club members, by the payment of dues to the club, would be enjoying the pool and tennis courts without the burden of paying ad valorem taxes. However, if any member built a swimming pool or a tennis court at his or her own home, these amenities would be considered in the property tax assessment of the home. Thus, to grant to a private club a property tax exemption on its club house, grounds, swimming pool, tennis courts, and golf course is to allow its members to enjoy tax-free amenities. If the property tax exemption were granted, it could not be said that the club members are merely *66 shifting resources that have already borne their tax burden.
The granting of a property tax exemption is not supported by the rationale of the Section 501(c)(7) exemption for clubs such as Sherwood Forest. The exemption from ad valorem property taxes provided in La. Const. art. VII, § 21(B)(1)(a)(i) to nonprofit corporations "organized and operated exclusively for religious, dedicated places of burial, charitable, health, welfare, fraternal, or educational purposes" implicitly recognizes the quid pro quo of an exchange of a property tax exemption for the public benefits provided by the listed organizations.
The history of tax exemptions for fraternal organizations as contrasted with social clubs is important. As of December 2002, the IRS was aware of 100,800 fraternal organizations. Of those, 78,000 were recognized as exempt under IRC 501(c)(8) and 22,800 as exempt under IRC 501(c)(10). See BARNETT & THOMAS at 1. Fraternal beneficiary societies[13] were first exempted from federal income taxation under section 38 of the Tariff Act of August 5, 1909, 36 Stat. 113 (1909).[14]Id. at 2. This legal development coincided with the rapid development of fraternal societies in the United States toward the end of the nineteenth century.
Sociologists have identified four reasons for the proliferation of American fraternal societies from the late 1880s to the early 1900s. See ALVIN J. SCHMIDT, THE GREENWOOD ENCYCLOPEDIA OF AMERICAN INSTITUTIONS: FRATERNAL ORGANIZATIONS (1980).
First, fraternal organizations were a major force in the social integration of over 40 million persons who immigrated to the United States between 1880 and 1920. Lodge meetings provided opportunities for immigrants not only to converse in their native tongues, but also to learn democratic processes. The lodge system taught the basic American values of voting and free speech without reprisal. Id. at 16.
Next, both types of fraternal organizations provided some financial security during a time of laissez-faire economics, when there were no governmental welfare or social security programs or unemployment benefits. Fraternal beneficiary societies were able to provide insurance certificates at relatively low rates; domestic fraternal societies provided benevolence through charity funds, mutual aid, and the establishment of homes for orphans and the aged. Id. at 17.
The third reason thousands of citizens, in an America that was still rural rather than urbanized, opted to join a particular fraternal organization was social prestige. The fraternal orders had signs, passwords, and secret rituals; members could don colorful regalia for public events as well as secret rituals. The lodge gave a member in good standing a feeling of privilege in his community that was enjoyed only by his "brothers." Id. at 17-18.
Finally, fraternal organizations provided members a religious function through rituals, *67 hymns, and moral teachings. An altar with a Bible is often a required lodge-room furnishing. The Scottish Rite Masons and other fraternal secret orders refer to their lodge halls as "Cathedrals" and "Temples." The religious qualities of many fraternal orders are apparent by their rituals, which are tantamount to a church's worship service. Id. at 18-19.
Of the four activities cited by sociologists that formed the basis for the establishment of the large contingency of fraternal orders that exists in the United States today, three obviously conferred public benefits  social integration, through education, into a democratic society; economic security with insurance and/or welfare benefits; and religious and morality practices and/or education. The fourth attribute of fraternal associations  social prestige  is more personal than public, but can be said to contribute to a cohesive community.
The IRC, as does the Louisiana Constitution, fails to define "fraternal purpose." However, the IRS has gleaned from the history of fraternal societies and the history of tax exemptions of fraternal beneficiary societies that the word "fraternal" means a "common tie or goal." The IRS presumes that Congress used the term in the ordinary sense, and according to its legal significance, at the time of the passage of the 1909 Act that was the precursor of the current 26 U.S.C. § 501(c)(8). Shortly before the turn of the twentieth century, the court in National Union v. Marlow, 74 F. 775, 778-79 (8th Cir.1896), summarized the nature of a fraternal beneficiary society as a society "whose members have adopted the same, or a very similar calling, avocation, or profession, or who are working in union to accomplish some worthy object, and who for that reason have banded themselves together as an association or society to aid and assist one another, and to promote the common cause." The court noted that the word "fraternal" could properly be applied to such an association because the pursuit of a common object, calling, or profession usually has a tendency to create a "brotherly feeling among those who are thus engaged." Id.
Extrapolating from the 1909 definition, the IRS states, almost a century later, that "fraternal" means a "common tie or goal." BARNETT & THOMAS at 3. When an organization is organized for fraternal purposes, its fraternal activities must be substantial and primary. Neither "union-like" activities that relate to the members' working conditions nor political activity is considered fraternal activity. The restriction is consistent with the provision of La. Const. art. VII, § 21(B)(1)(a)(i) that uses the term "exclusively."
More pertinent than any of the above in relation to the issue in the instant case is the IRS pronouncement that "common tie" requires more than just engaging in social activities. The IRS observes that "[w]hile social activities often play a significant role in a fraternal society, the requirement of a common `calling, avocation, or profession,' or `pursuit of a common object' is not satisfied by the presence of social activities alone." Id. at 4. As an example, the IRS cites Polish Army Veterans Post 147 v. Commissioner of Internal Revenue, 24 T.C. 891, rev'd on other grounds, 236 F.2d 509 (3 Cir.1956). (Veterans organization lacked a common tie because only ten percent of its membership had the common tie of being ex-members of the Polish Armed Forces; 90 percent of the total membership were social members and had nothing in common with the active members or with each other.) The court stated an "organization cannot be classed as fraternal where the only common bond between the majority of the members is their membership *68 in that organization." Id. 24 T.C. at 896.
The IRS notes that fraternal organizations have traditionally engaged in social and recreational activities to complement their purely fraternal activities. The operation of a bar, restaurant, or general meeting hall is an accepted social and recreational activity in which fraternal organizations may engage. BARNETT & THOMAS at 16. However, merely operating such facilities does not entitle the operator designation as a fraternal organization. Such an organization more properly is classified under 26 U.S.C. § 501(c)(7), organized for "pleasure, recreation, and other nonprofitable purposes." Although such "social clubs" offer activities that are often similar to the social activities conducted by fraternal organizations, social clubs are not fraternal. Id. at 15.
In the instant case, Sherwood Forest has failed to show that it is an organization that is "organized and operated exclusively for . . . fraternal . . . purposes." There is no common bond among its membership. According to the Restated Articles of Incorporation, the club consists of stockholders who are either voting members or non-voting members. No further description of the membership is provided in the record. The president's affidavit falls short of proof of a common tie in that it merely states a conclusion of the ultimate fact at issue, i.e., that the Sherwood Forest property is used for "fraternal purposes." The corporation was organized to build and own a clubhouse, a swimming pool, tennis courts, and a golf course. Sherwood Forest has not provided any evidence of commonality between clubhouse users and swimmers, or between swimmers and tennis players, or between golfers and any of the above. Stated simply, Sherwood Forest was organized and remains a country club and not a fraternal organization.
In considering the generally prevailing meaning of the words of the constitutional provision at issue in this case, which are not defined in the constitution, we have found it appropriate to survey various definitions of "fraternal" within the tax context because this is a tax exemption provision. These definitions are instructive. The fraternal organizations defined by Louisiana law and the IRC clearly fit within the meaning of "fraternal" intended by the constitution. The dictionary definitions used by the court of appeal also may include other organizations entitled to the exemption, but do not include a country club which lacks the requisite commonality among its members. Thus, considering the facts of the instant case, it was in the application of the definitions that the court of appeal erred. The broad application contradicts the rule requiring narrow construction of provisions granting exemptions from taxation. Broadly applying the general dictionary definition of "fraternal" to a country club such as the instant plaintiff would emasculate the exception contrary to the constitution, which envisions a limited application.

CONCLUSION
While Sherwood Forest Country Club undoubtedly serves a valuable purpose in providing social and recreational opportunities for its members, we cannot find that it fits within the strict construction of a "fraternal purpose" based on the constitutional exemption at issue. Ultimately, we conclude that Sherwood Forest has failed to show that it is an association organized and operated exclusively for fraternal purposes within the intent and meaning of La. Const. art. VII, § 21(B)(1)(a)(1).
Plaintiff's evidence reveals it is a country club, which is exempt from federal *69 income tax as a social club. Sherwood Forest is not a fraternal secret society or a fraternal benefit society in the historical sense. It is not a fraternal "beneficiary" association pursuant to 26 U.S.C. § 501(c)(8) or a domestic fraternal association that devotes its net earnings exclusively to charitable and fraternal purposes pursuant to 26 U.S.C. § 501(c)(10). It is not a fraternal beneficiary society that provides insurance pursuant to LSA-R.S. 22:541, et seq., or a fraternal society that operates on a lodge system but does not provide insurance benefits, as identified in LSA-R.S. 47:57. Most importantly, Sherwood Forest has failed to prove that its admitted organization "exclusively" for "pleasure, recreation, and other nonprofitable purposes" is synonymous with being "organized and operated exclusively for. . . fraternal . . . purposes" as required by the Louisiana constitution.
In sum, classification of Sherwood Forest as an association organized and operated exclusively for fraternal purposes would be inconsistent with a strict interpretation of the constitutional property tax exemption granted by the people of the State of Louisiana for organizations that provide a public benefit as quid pro quo.
Accordingly, the judgments of the lower courts are reversed; the petition of Sherwood Forest Country Club is dismissed with prejudice.
REVERSED.
JOHNSON, J., concurs.
KNOLL, J., additionally concurs and assigns reasons.
KNOLL, Justice, additionally concurring.
I additionally concur and write separately to emphasize that the disputed ad valorem exemption is not necessarily denied to a club solely because it is exempted from federal income taxation under I.R.C. § 501(c)(7). As explained below, my additional concurrence is based upon the lack of evidence in the present record establishing sufficient commonality among the members of this club.
The dividing line between a section 501(c)(7) social club and an exempt fraternal society, as defined by I.R.C. § 501(c)(8) or (10), is not as easily applicable to the present dispute as it might appear on first impression. The complex federal tax provisions do not perfectly match the straightforward "fraternal purposes" test enunciated by our Constitution. As noted in the opinion, a section 501(c)(8) fraternal organization must generally provide insurance benefits while a section 501(c)(10) fraternal organization does not. The fraternal societies exempted under these provisions must have a fraternal purpose, and with one narrow exception they must be organized under the lodge system. An association organized and operated exclusively for fraternal purposes, but not organized under the lodge system, would not qualify as a fraternal society under paragraphs (8) or (10). However, there is no lodge requirement in La. Const. art. VII, § 21(B)(1)(a)(i), therefore such an organization would still qualify for the State ad valorem exemption. This is the most obvious example of why it is inappropriate to use federal income tax classification as a dominant factor in our review of an organization's eligibility for a State ad valorem exemption.
The U.S. Treasury has stated that a paragraph (7) social club is excluded from procuring a paragraph (10) fraternal society exemption. Treas. Reg. § 1.501(c)(10)-1. However, there is no language in the Louisiana Constitution that prevents such social clubs from having a qualifying fraternal purpose under Article XII, § 21(B)(1)(a)(i). There is no apparent reason *70 why an organization could not be classified as something other than fraternal under specific federal tax definitions, but still be classified as organized exclusively for fraternal purposes under our State ad valorem exemption.
I disagree with any interpretation that prevents all section 501(c)(7) clubs from qualifying for the Article VII, § 21(B)(1)(a)(i) exemption. I do not find that the opinion must be read this broadly, because in my view it confused the simple issue presented in this case by unduly relying upon federal classifications.[1] I am concerned that the opinion will be read expansively and this will lead to unintended consequences. A possible inconsistency between the federal tax classification and the state exemption is found in the Beta Xi case that was repeatedly cited in the opinion. Beta Xi Chapter of Beta Theta Pi v. City of New Orleans, et al., 18 La.App. 130, 137 So. 204 (La.App. Orleans 1931). In Beta Xi the court found that the collegiate fraternity performed the "usual fraternal functions performed by most Greek letter college fraternities" and was therefore ineligible for a separate property tax exemption concerning property devoted by a "charitable and fraternal" club or lodge to "charitable undertakings". Id. (emphasis provided). The Beta Xi court correctly classified a college fraternity as an organization performing fraternal functions.[2] However, a college fraternity or sorority does not qualify as a fraternal society under paragraphs (8) or (10), and is instead classified just like a country club, as a section 501(c)(7) social club.[3] Therefore, eligibility for the State ad valorem exemption granted to an organization organized exclusively for fraternal purposes will not necessarily match the classification of the same organization as fraternal or social under the federal tax code.
The words of a law must be given their generally prevailing meaning. La. Civ. Code art. 11. The term "fraternal" is defined as "relating or belonging to a fraternity or an association of persons formed for mutual aid and benefit, but not for profit." Black's Law Dictionary, 594 (5th ed.1979).[4] Adopting this definition does not improperly broaden the scope of the exemption; the generally prevailing definition of fraternal must be considered when determining the proper scope of the exemption. While instructive, the classifications of the Internal Revenue Code cannot be imported in their entirety and substituted for our general rules of statutory construction. *71 It is likely that the generally prevailing meaning of a word will not equate to a technical definition provided by the Congress in its quest for revenue.[5]
In amending I.R.C. § 501(i)(1), the Congress recognized that the auxiliaries of fraternal societies are exempt under section 501(c)(7). P.L. 96-601, 12-24-1980. The IRS has stated that "an unincorporated, subordinate lodge of the Knights of Columbus" was an example of a section 501(c)(7) fraternal society auxiliary. 1982 I.R.S. Exempt Organizations Continuing Professional Education Technical Instruction Program: Social Clubs: IRC 501(c)(7) Organizations, http://www.irs. gov/pub/irs-tege/eotopicc82.pdf (1982 EO CPE).[6] Although it does not comply with the technical IRS definition of a fraternal society, the purpose behind this type of entity seems to comport with the prevailing societal view of a fraternal purpose as defined above. I do not find that the federal classification provides clear evidence of the true purpose of an organization. The federal Tax Court recognizes the confusing overlap that can occur in this area of law, and has stated that:
"[t]rying to understand the various exempt organization provisions of the Internal Revenue code is as difficult as capturing a drop of mercury under your thumb. There are currently 23 categories of exempt organizations under section 501(c) . . . Rarely is it clear that an organization would qualify only under one of the categories of section 501(c), and often it is clear that an organization would qualify under a number of the categories, even though a particular organization may have applied for and actually received its exemption letter under a single provision."
Zeta Beta Tau Fraternity, Inc. v. C.I.R., 87 T.C. No. 23, 87 T.C. 421, 429 (U.S. Tax Court 1986) (citing Weingarden v. C.I.R., 86 T.C. No. 669, 675 (U.S. Tax Court 1986)). The Internal Revenue Manual even recognizes the similarities among social and fraternal organizations, and states that:
[f]raternal activites include social activities. Social activities tend to promote a brotherly feeling among those who are thus engaged. The promotion of a brotherly feeling is a fraternal purpose. The basic difference between IRC 501(c)(8) organizations and IRC 501(c)(7) organizations is that IRC(c)(7) [social clubs] are not operated under a lodge system.
I.R.S. Examination Guidelines-Membership and Fraternal Activities, I.R.M. 4.76.17.4.1 (3-1-03)(emphasis provided).
The federal government has narrowly defined certain categories of fraternal organizations that qualify for special tax exemptions as "fraternal societies". Certain organizations otherwise considered fraternal do not qualify as "fraternal societies" unless they operate under a lodge framework *72 or function as a type of insurance or welfare system. However, these organizations qualify as tax exempt under the more general provision exempting all clubs that operate for "pleasure, recreation, and other nonprofitable purposes." I.R.C. § 501(c)(7) (emphasis provided). The fraternal purpose of a club that does not qualify as a fraternal society under paragraphs (8) or (10) is still treated as a "nonprofitable purpose" under paragraph (7). Therefore, an organization like the previously mentioned local Knights of Columbus group could have a qualifying fraternal purpose for the State ad valorem exemption even if the IRS classifies it differently for federal income tax purposes.
A fraternal purpose includes a purpose "relating or belonging to a fraternity". Black's Law Dictionary, 594 (5th ed.1979).[7] As the court of appeal observed, fraternity is defined as "[a] body of people associated for a common interest or purpose" and "[a] group of people united by similar backgrounds, interests, or occupations." Sherwood Forest Country Club v. Litchfield, 07-989, p. 5 (La.App. 1 Cir. 12/21/07), 978 So.2d 443, 446 (citing Webster's II New College Dictionary, 485 (1995)) (emphasis provided). Therefore, I agree with the opinion in finding that a common bond must exist among club members apart from their membership in the organization seeking the exemption. As discussed in the opinion, the commonality found in the membership of a fraternal club is reinforced by its activities and rituals. The ritual of initiation for new members in some fraternal organizations is an example of the cohesive bonding that might occur in fraternal clubs. The collective nature of the activities made available by the club to its membership could also support finding a common purpose, because the common purpose of the members would be advanced by the members' collective participation in the activities of the organization.
In the present case, the record lacks evidence that the activities of this club occur collectively or are centrally planned, nor is there evidence that supports finding a common purpose among the club members. The members of this club separately participate in a myriad of recreational activities according to their own individual interests, but this is not sufficient proof of a common purpose or common interests among the membership. Additionally, a commonality of interests or backgrounds should be apparent in a fraternal organization. However, there is no apparent evidence of record that the members of this club share common interests, backgrounds, or a common purpose.
I agree that a fraternal organization must provide evidence of a commonality among its members apart from their membership in the club itself. The interests, purposes, and backgrounds of the Sherwood Forest Country Club members do not establish a sufficient commonality to justify an exemption under La. Const. art. VII, § 21(B)(1)(a)(i).
I write separately to emphasize that I rely on the generally prevailing meaning of fraternal as defined in this concurrence rather than an analysis of federal tax classifications. The classification of the club under the federal exemption scheme is not independently persuasive. While a recreational purpose can overlap with a fraternal purpose, the generally prevailing meaning of fraternal purpose is not *73 broad enough to encompass the myriad of primarily recreational activities occurring at this particular club. Significantly, in the record before us, this club has not provided evidence of a commonality among its members sufficient to support an exemption as a fraternal organization. Accordingly, I additionally concur and agree that the Sherwood Forest Country Club is not entitled to an ad valorem tax exemption under La. Const. art. VII, § 21(B)(1)(a)(i).
NOTES
[1] Retired Judge Philip C. Ciaccio sitting ad hoc for Kimball, J., recused.
[2] Apparently there is no dispute that Sherwood Forest is also exempt from state income tax pursuant to LSA-R.S. 47:287.501, which is entitled "Exemption from tax on corporations" and which provides, in pertinent part, that an "organization described in I.R.C. Sections 401(a) or 501 shall be exempt from income taxation . . . to the extent such organization is exempt from income taxation at federal law, unless the contrary is expressly provided."
[3] This definition is identical to the definition in BLACK'S LAW DICTIONARY, 788 (Revised 4th ed.1968). The definition was taken from In re Mason Tire & Rubber Co., 56 App.D.C. 170, 11 F.2d 556, 557, which was litigation involving a trademark allegedly based on a "design or picture" adopted by a fraternal organization; it was not a tax exemption case.
[4] A review of the transcripts of the 1973 Constitutional Convention did not shed light on the issue presented in this matter.
[5] For the sake of completeness, we note La. Const. art. VII, § 21(B) also provides:

(3) property of an organization such as a lodge or club organized for charitable and fraternal purposes and practicing the same, and property of a nonprofit corporation devoted to promoting trade, travel, and commerce, and also property of a trade, business, industry or professional society or association, if that property is owned by a nonprofit corporation or association organized under the laws of this state for such purposes.
In arguing that it meets all of the qualifications of La. Const. art. VII, § 21(B)(1)(a)(i), Sherwood Forest concedes that it is not organized for charitable purposes and, thus, does not claim a property tax exemption pursuant to La. Const. art. VII, § 21(B)(3). Nevertheless, because "fraternal" is used in both provisions, any meanings attributed to "fraternal" must be consistent in both of the provisions.
[6] The immediate precursor to these provisions was in the Louisiana Constitution of 1921, Article 10 § 4, "Tax exemptions" which provided, in pertinent part:

The following property, and no other, shall be exempt from taxation:
. . . .
2. Religious, charitable and educational property. Places of religious worship, rectories and parsonages belonging to religious denominations and used as places of residence for ministers; places of burial; places devoted to charitable undertakings, including that of such organizations as lodges and clubs organized for charitable and fraternal purposes and practicing the same; schools and colleges.
The same section also provided an exemption for "athletic or physical culture clubs, associations or organizations" with the proviso that they have at least 1,000 members and that they promote physical and health development for all ages over eight years.
The Louisiana Constitutions of 1913, 1898, and 1879 exempted church and burial property, and "all charitable institutions" without any mention of fraternal purposes. The Louisiana Constitutions of 1868 and 1864 merely provided exemptions for property actually used for "church, school, or charitable purposes."
[7] Exemptions have been denied for various types of property. See Lodge # 817, Trustees Benevolent and Protective Order of Elks v. Supervisor of Assessments of Wicomico County, Maryland, 292 Md. 533, 439 A.2d 591 (1982) (golf course); People ex rel. Nelson v. Rockford Lodge No. 64 B.P.O.E. 348 Ill. 528, 181 N.E. 432 (1932) (club room with bowling alley and other facilities); Sahara Grotto and Styx, Inc. v. State Board of Tax Commissioners, 147 Ind. App. 471, 261 N.E.2d 873 (1970) (brick buildings used for social purposes); Aerie 1287 Fraternal Order of Eagles v. Holland, 226 N.W.2d 22 (Iowa 1975) (building equipped with profit-making bar); Benevolent Association of Elks v. Wintersmith Tax Commissioner of Jefferson County, 204 Ky. 20, 263 S.W. 670 (1924) (assembly hall, gymnasium, dining room, club rooms); Boston Lodge, No. 10 B.P.O.E. v. City of Boston, 217 Mass. 176, 104 N.E. 453 (1914) (club house); St. Louis Lodge No. 9, B.P.O.E. v. Koeln, 262 Mo. 444, 171 S.W. 29 (1914) (club house); Nature Conservancy v. Town of Nelson, 107 N.H. 316, 221 A.2d 776 (1966) (real estate used for recreation); Camden Lodge No. 111 Royal Order of Moose v. City of Camden, 135 N.J.L. 532, 53 A.2d 341 (1947) (building with bar, cocktail lounge, grill, card rooms); People ex rel. Syracuse Masonic Temple v. Ostrander, 105 Misc. 405, 173 N.Y.S. 356 (1918) (social club for members); Wilson v. Licking Aerie No. 387, F.O.E., 104 Ohio St. 137, 135 N.E. 545 (1922) (clubroom used for recreation, social gatherings); North Gates Elks Club v. Garner, 496 S.W.2d 887 (Tenn.1973) (property used for social activities, lodge meetings); Baker v. One Piece of Improved Real Property, 570 P.2d 1023 (Utah 1977) (property used for drinking, dancing, card playing, social functions). Accord, Beta Xi Chapter of Beta Theta Pi, 18 La.App. 130, 137 So. 204 (fraternity chapter house denied property tax exemption).
[8] This type of society is described in LSA-R.S. 22:541, which provides, in pertinent part:

A fraternal benefit society is any incorporated society, order, or supreme lodge, without capital stock, . . . conducted solely for the benefit of its members and their beneficiaries and not for profit, operated on a lodge system with ritualistic form of work, having a representative form of government, and which provides benefits in accordance with [Title 22, the Louisiana Insurance Code].
[9] A similar provision is found in LSA-R.S. 47:57, which provides, in pertinent part:

In computing the net income of an individual, or a corporation, [for Louisiana Income Tax purposes] deductions shall be allowed for contributions or gifts made within the taxable year to or for the use of:
. . . .
(5) A fraternal society, order, or association, operating under the lodge system, but only if such contributions or gifts are to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals.
[10] "An organization is `operating under the lodge system' if it is carrying out its activities under a form of organization that comprises local branches called lodges, chapters, and the like. The local branches must be chartered by a parent organization and [be] largely self-governing." BARNETT & THOMAS at 6. The term "operating under the lodge system" implies, at a minimum, two active entities: a parent and a subordinate "lodge." Id.; see Fraternal Order of Civitans of America v. Commissioner of Internal Revenue, 19 T.C. 240 (1952).

Pursuant to Louisiana law, a "society" is operating under the lodge system "if it has a supreme governing body and subordinate lodges into which members are elected, initiated, or admitted in accordance with its laws, rules, and ritual. Subordinate lodges shall be required by the laws of the society to hold regular meetings at least once each month in furtherance of the purposes of the society." LSA-R.S. 22:542. See also, definition of fraternal benefit societies, LSA-R.S. 22:541, requiring a representative form of government; see also, definition of a representative form of government, LSA-R.S. 22:543.
[11] An exception applies to separately organized insurance branches of fraternal societies. These branches need not operate under the lodge system, but they must provide permissible benefits exclusively to members of a lodge system.
[12] The authors note that the additional purposes for domestic fraternal societies are the purposes that would be considered exempt purposes under 26 U.S.C. § 501(c)(3), which provides, in pertinent part:

Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition. . . or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual.
The United States Supreme Court has stated that Section 501(c)(3) and the corresponding provision for income tax deductions of charitable donations, 26 U.S.C. § 170, embrace the common law "charity" concept. Both of these sections seek to achieve the same basic goal of encouraging the development of certain organizations, those that serve a public purpose, through the grant of tax benefits. Bob Jones University v. United States, 461 U.S. 574, 586, 103 S.Ct. 2017, 2026, 76 L.Ed.2d 157 (1983).
[13] For ease of reference, we will use the designations of "fraternal beneficiary societies" and "domestic fraternal societies" as used in the IRC, although we acknowledge that there is no requirement that the exemption of La. Const. art. VII, § 21(B)(1)(a)(i) be limited to domestic organizations.
[14] An exemption for domestic fraternal societies, Section 501(c)(10), was added to the Internal Revenue Code by the Tax Reform Act of 1969, Pub.L. No. 91-172, Section 121(b)(5)(A)(1969), 83 Stat. 487, 541. Prior to 1969, there was no exemption provided for fraternal societies operating under the lodge system that did not, in addition to their fraternal activities, also provide for the payment of life, sick, and accident benefits to their members. BARNETT & THOMAS at 13.
[1] I agree that it would be appropriate to comprehensively consider the nature of the federal exemption if the separate "exempt from federal or state income tax" component of this exemption were in dispute, but I do not feel that the nature of the federal tax exemption is as helpful in interpreting the separate fraternal purposes component of the disputed exemption.
[2] As noted in footnote 5 of the opinion, Sherwood claims exemption under a provision that does not include a charitable component. In Beta Xi the dispute concerned La. Const. (1921) art. X, § 10, the precursor of the § 21(B)(3) exemption that Sherwood concedes is inapplicable. The § 21(B)(1)(a)(i) exemption currently in dispute did not originally exist in the prior constitution.
[3] Treas. Reg. § 1.501(c)(10)-1, validity aff'd in Zeta Beta Tau Fraternity, Inc. v. C.I.R., 87 T.C. 421 (U.S. Tax Court 1986). See also, Rev. Rul. 69-573, 1969-2 C.B. 125.
[4] There is no alternative definition of "fraternal" in the Constitution or statute. As noted in the opinion, Louisiana statutes mirroring already referenced federal exemptions mention "fraternal benefit society" and "fraternal society, order, or association, operating under the lodge system" but these references are for the narrow purposes of the particular statute and do not provide a general definition of fraternal. La.Rev.Stat. 47:57 and 22:541
[5] I find that the dictionary definition of fraternal and fraternity is applicable in this case, therefore my discussion of the federal tax classification of these organizations is meant only to highlight the confusion inherent in using the federal tax code to interpret a commonly understood term found in our State Constitution.
[6] The U.S. Supreme Court held in Biddle v. C.I.R., 302 U.S. 573, 582, 58 S.Ct. 379, 82 L.Ed. 431 (U.S. 1938) that "departmental rulings not [formally] promulgated by the Secretary [of the Treasury] are of little aid in interpreting a tax statute", and the I.R.S. prefaces access to these EO CPE documents by stating that "under no circumstances should the contents of these articles be used or cited as authority for settling or sustaining a technical position." However, the opinion extensively cites to the 2004 version of the EO CPE (BARNETT & THOMAS) and there is no reason that the 1982 version would be less instructive.
[7] There is no indication that this Country Club is a mutual aid society as referenced in the second part of the definition of fraternal.