GUIDRY, J.
|¡>In this action seeking return of taxes paid under protest, plaintiffs-, Crowne Air, Inc., Air Cover, Inc., and Warren Bourg, appeal from a judgment of the trial court granting,,summary judgment, in favor of •defendant, Louis Fitzmorris,, Assessor of St. Tammany Parish, and dismissing their claims against him. For the reasons, that follow, we affirm.. •
FACTS AND PROCEDURAL HISTORY
On January 25, 1990, the City of Slidell (City) entered into an Intergovernmental Agreement with the Parish of St. Tammany (Parish) and‘the St. Tammany Airport Authority No. 1 (Authority), whereby the Parish and the Authority leased property commonly known as the Slidell Airport (Airport) to the City, which assumed responsibility for the operation and management of the Airport. Thereafter, the City entered, into three separate lease agreements, -two with Air Cover and one with Crowne. Air, whereby the City subleased certain parcels of land at the Airport to Air Cover and Crowne Air for the construction of T-hanger buildings.
Therafter, on October 23, 2013, the St. Tammany Parish Assessor’s Office (Assessor’s Office) issued notices to Air Cover, Crowne Air, and Bourg stating that it had determined after a review that the assessed value of their property should be increased by adding hangers 19, 21 and 2 at the Airport to the tax roll. The Assessor’s Office also forwarded copies of the tax bills for the respective leased properties. Thereafter, Air Cover, Crowne Air, *116 and/or Bourg paid the assessments, under protest.
On August 14, 2014, Air Cover, Crowne Air, and Bourg filed a petition for declaratory judgment and to recover taxes paid under protest, naming as defendants St. l.gTammany Parish Sheriff Jack Strain, Jr., in his capacity as Tax Collector for the Parish of St. Tammany; Louis Fitzmorris, in his capacity as St. Tammany Parish Assessor; and Pete Peters, in his capacity as Commissioner Chairman of the Louisiana Tax Commission. In their petition, Air Cover, Crowne Ah-, and Bourg asserted that pursuant to lease and operating agreements to operate as non-commercial aviation operators at the Airport, dated November 3, 2003, April 3, 2006, and May 6, 2009, the City leased certain parcels of land within the Airport in the City’s geographical limits and control to Air Cover, Crowne Air, and/or Bourg for the construction, maintenance, and use of improvements, namely airport building numbers 19, 21, and 2 along with T-hangers, for non-commercial aeronautical activities, advantageous and essential to the City’s operation of the Airport.[1]
Air Cover, Crowne Air, and Bourg further asserted that the leasehold improvements on the land, leased by the City for the purpose of improving and operating the Airport, are vital to the economic development of the City and Parish and serve public, governmental, and municipal purposes. Therefore, because La. Const. Art. 7, § 21(A) provides that public lands and other public property used for public purposes shall be exempt from ad valorem, taxation, Air Cover, Crowne Air, and Bourg sought a declaration that their leasehold improvements, namely airport buildings and T-hangers 19, 21 and 2, are used for a public purpose and are exempt from ad valorem taxation pursuant to La. Const. Art. 7, § 21(A) and La. R.S. 2:131, et seq. Air Cover, Crowne Air, and Bourg further sought a refund of the full amount of ad valorem taxes for tax year 2013 paid under protest, together with any and all interest accrued on said amounts.
Thereafter, Fitzmorris filed a motion for summary judgment, asserting that there is no genuine issue as to material fact that Air Cover, Crowne Air, and Bourg do not qualify as tax exempt organizations or individuals and that the leasehold Lproperty that is being assessed is owned by Air Cover and Crowne Air. Following a hearing on the defendant’s motion, the trial court signed a judgment granting summary judgment in favor of Fitzmorris, Assessor of St. Tammany Parish, and dismissing Air Cover, Crowne Air, and Bourg’s action. Air Cover, Crowne Air, and Bourg now appeal from the trial court’s judgment.
STANDARD OF REVIEW
A motion for summary judgment is a procedural device used to avoid a full scale trial when | fithere is no genuine issue of material fact. Johnson v. Evan Hall Sugar Cooperative, Inc., 01-2956, p. 3 (La. App. 1st Cir.12/30/02), 836 So.2d 484, 486. A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a *117 matter of law. La. C.C.P. art. 966(B)(2).[2] Only evidence admitted for purposes of the motion for summary judgment shall be considered by the court in its ruling on the motion. La. C.C.P. art. 966(F)(2).
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require that all essential elements of the adverse party’s claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La. C.C.P. art. 966(C)(2).
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Lieux v. Mitchell, 06-0382, p. 9 (La.App. 1st Cir, 12/28/06), 951 So.2d 307, 314, writ denied, 07-0905 (La.6/15/07), 958 So.2d 1199.
DISCUSSION
A tax exemption, being an exceptional privilege, must be expressly and clearly conferred in plain terms. Sherwood Forest Country Club v, Litchfield, 08-0194, p. 6 (La.12/19/08), 998 So.2d 56, 61. Exemption provisions are strictly construed against the taxpayer claiming the benefit of the exemption and must be unequivocally and affirmatively established by the taxpayer. Sherwood, 08-0194 at p. 6, 998 So.2d at 61.
Louisiana Constitution Article VII, § 21(A) provides that “[pjublic lands and other public property used for public purposes” are exempt from ad valorem taxation. Accordingly, in order to be exempt under La. Const. Art. VII, § 21(A), the property must be public (i.e., vested in or owned by the public), and it must be used for a public purpose. See Slay v. Louisiana Energy and Power Authority, 473 So.2d 51, 53 (La.1985); see also Board of Commissioner of the Port of New Orleans v. City of New Orleans, 13-0881, pp. 6-7 (La.App. 4th Cir.2/26/14), 135 So.3d 821, 825.[3]
In the instant case, Fitzmorris pointed out that Air Cover, Crowne Air, and Bourg, two for-profit corporations and an individual, are not tax exempt organizations or individuals nor have they submitted any evidence of their tax | (¡exempt status.[4] Particularly, Fitzmorris asserted *118 that the language of the lease and operating agreements between the City and Air Cover and Crowne Air provides that any improvements on the leased premises remain titled in the name of the entity that constructed.them until such time as the lease is terminated. Paragraph 31, entitled Permanent Improvements Owned By Tenant At Termination of Lease, provides:
At the termination of this Lease for any reason, except as outlined in Paragraph 32 below, and with the exception of all permanent-type improvements attached to the PROPERTY which become the property of the CITY pursuant to provisions of Section 135 of Title 2 of the Louisiana ■ Revised Statutes, "CITY shall be entitled to have the PROPERTY herein returned to it clear of all improvements above ground level which have been constructed by TENANT; provided, however, that TENANT may have ninety (90) days after termination in which finally to remove any such improvements, and provided that such occupancy for purposes of removal shall be subject to rentals due hereunder. If TENANT fails to remove the improvements, they may hereafter be removed by CITY at TENANT’S expense.
CITY may, at its option, take title to said improvements ,in lieu of removal by or for TENANT, :
Accordingly, based on the language of the lease and operating agreements, Fitz-morris contended that because the leasehold improvements at issue are owned by Air Cover and Crowne Air, two for-profit companies, until their respective leases with the City are terminated,’ they'are properly subject to ad valorem taxation by the Assessor. Fitzmorris submitted copies of Air Cover and Crowne Air’s' articles of incorporation and copies of their respective lease and operating agreements .with , the City in support of his motion for summary judgment.
Therefore, the burden shifted to Air Cover, Crowne Air, and Bourg to come forward with evidence- establishing that they will be able to meet their burden of |7proving at trial that the improvements at issue on the property leased from the City by Ah’ Cover and Crowne Air are. exempt from ad valorem taxation, ...
■In opposing Fitzmorris’ motion for summary judgment, Air Cover, Crowne Air, and Bourg asserted that, the leasehold improvements at issue are vested in or owned by the public ahd. Air, Cover and Crowne Air, as third-party lessees of the City, agreed, through , their respective lease and operating agreements, to construct, maintain, and use ,the improvements at the Airport for public purposes, namely non-commercial aeronautical activities essential to the City’s operation of the Airport and vital to the economic development of the Parish, In support of their argument, Air Cover, -Crowne Air, and Bourg submitted a copy of the Intergpv-ernmental Agreement between the City, the Parish and the Authority. The introductory paragraphs of the agreement provide that the continued operation of the Airport is vital to the economic development of the area' which it serves. Additionally, Article 1, paragraph 8, provides that “[ejxcept as otherwise provided herein, all additions, alterations or improvements made by City, no matter how attached ... must remain the property of Parish[.]”
Air Cover, Crowne Air, and Bourg assert that the Intergovernmental Agreement provisions clearly denote the public purpose of the land-lease and establish that all improvements made at the Airport are owned by the Parish;' therefore, the leasehold improvements áre exempt from ad valorem taxation. However, based on *119 our review of the evidence in the record, we find no merit in Air Cover and Crowne Air’s argument.
First, it is the lease and operating agreements between the City and Air Cover and Crowne Air that determine the rights and obligations of the sublessor and the sublessee. See Gennaro v. Royal Oldsmobile Company, Inc., 09-1062, p. 7 (La.App. 6th Cir.5/25/10), 37 So.3d 1109, 1114. Based on the language of the lease and operating agreements, the City, Air Cover, and Crowne Air clearly | ^contemplated that any permanent improvements made by Air Cover or Crowne Air during the lease term remained the property of Air Cover and Crowne Air until such time as the lease was terminated. In addition to paragraph 31, stating that permanent improvements made by the tenant are owned by the tenant during the lease term, paragraph 26 further provides: '
TENANT shall, during the continu-anee of the Lease, and any renewal thereof, at its own cost and expense, carry adequate casualty insurance with extended coverage insuring improvements on the leased premises against loss by reason of fire, explosion, windstorm or other casualty, to the full value of such improvements.
Additionally, paragraph 33 provides that “TENANT agrees that it will pay when due all taxes which may be assessed pursuant to law against the leased premises[.]” Therefore, reading the lease agreements as a whole, it is clear that the parties contemplated that any improvements to the leased premises made by the tenants during the lease period were owned by the tenants, Air Cover and Crowne Air, until the expiration of the lease.
Further, we find no merit to the assertion made by Air Cover, Crowne Air, and Bourg, -that even if the improvements were owned by them they were translated into the public domain, as there is no evidence in the record that Air Cover or Crowne Air permitted the land to be used by the public with the intention of making a dedication. to public use. See Abundance Square Associates, L.P. v. Williams, 10-0324, p. 8 (La.App. 4th Cir.3/23/11), 62 So.3d 261, 265 (recognizing that property dedicated to public use, the revenues of which serve a public purpose, is public property, although title be not in the public). Therefore, the improvements made by Air Cover and Crowne Air to the property leased from the City are owned by Air Cover and Crowne Air. See Schulingkamp v. Heaton, 455 So.2d 1181, 1182-1183 (La.App. 4th Cir.), writ denied, 460 So.2d 1045 (La.1984).
|flFinally, Air Cover, Crowne Air, and Bourg have failed to establish that the improvements are for a public purpose. Air Cover and Crowne Air assert that the improvements are for a public purpose, relying on language from the Intergovernmental Agreement between the City, the Parish, and the Authority, which declares that the land be used for non-commercial aeronautical activities essential to the City’s operation of its public airport and beneficial to the City’s economic development. However, the lease and operating agreements between the City and Air Cover and Crowne Air, while providing that the leased property is to be used by tenants for non-commercial aeronautical activities, do not contain the additional language found in the Intergovernmental Agreement. In fact, the lease and operating agreements specifically provide that Air Cover and Crowne Air are granted general privileges, uses and rights, including “[t]he general use ... of all public airport facilities and improvements which are now or may hereafter be connected *120 with or appurtenant to the AIRPORT ... which permitted uses shall include the lease of T-hangars to third parties for profit” (Emphasis added.)
Accordingly, from our review of the record, and in particular, the lease and oper.ating agreements between the City and Air Cover and Crowne Air, we find that Air Cover, Crowne Air, and Bourg failed to come forward with evidence establishing that they would be able to meet their stringent burden of proving at trial that the improvements at issue are public property being used for a public purpose.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court granting summary judgment in favor of Louis Fitzmor-ris and dismissing the claims of Air Cover, Inc., Crowne Air, Inc., and Warren Bourg in their entirety. All costs of this appeal are assessed to Air Cover, Inc., Crowne Air, Inc., and Warren Bourg.
AFFIRMED.

. The City entered into a lease and operating agreement with Air Cover on November 3, 2003, with regard to airport building number 19 and T-hangers; with Air Cover on April 3, 2006, with regard to airport building number 21 and T-hangers; and with Crowne Air on May 6, 2009, with regard to airport building number 2 and T-hangers.

. All citations in this opinion to La. C.C.P. art 966 are to that article as it existed prior to its amendment by 2015 La. Acts, No. 422, Sec. l(effective 1/1/16).

. Air Cover and Crowne Air admitted in the trial court and in their brief on appeal that they are not nonprofit corporations, organized for purposes whereby property owned by them is exempt from ad valorem taxation under La. Const. Art. VII, § 21 (B)( 1 )(a)(i). Rather, they solely contend that they are exempt from taxation under La. Const. Art. VII, § 21(A).

.Fitzmorris also contests Bourg's capacity to file suit for declaratory judgment and for refund of taxes paid under protest because he was not a party to the lease agreements at issue. However, because we affirm the trial court's judgment, dismissing the claims of Air Cover, Crowne Air, and Bourg, we pretermit discussion of Bourg's capacity to file suit in this matter.